*E-Filed 12/10/12*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

GREGORY BLUITT,

    Petitioner,

    v.

MICHAEL MARTEL,

    Respondent.

No. C 09-3994 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2004, an Alameda County Superior Court jury found petitioner guilty of two counts of lewd and lascivious acts on a child, and one count of continuous sexual abuse of a child. Consequent to the verdicts, petitioner was sentenced to 18 years in state prison.

Evidence presented at trial showed that petitioner sexually assaulted C., an eight-year-old female and his grand-niece, on the evening of December 7–8, 2002. Semen bearing petitioner's DNA profile was found on C.'s thighs, and she testified that petitioner had sexually molested her on that night, and about ten previous times since she was seven. A

1 witness testified that a "generalized redness in the area between C.'s labia near her urethra
2 . . . could have been caused by the penetration of a penis into her vagina." (Ans., Ex. 6 at
3 2–3.)

4     Petitioner testified that he was innocent. He asserted that on December 8th, he fell
5 asleep alone on the sofa:

> When he awoke he felt as if he had been "having a wet dream," and put his hand "down toward my crotch." He looked up and saw C. "raising up and fumbling [with] her clothing." C. "said something like — mentioning a rubber. [petitioner] said "what?" and she "looked embarrassed" and "ran into the restroom." A short time later, [petitioner] put his arm around C. and asked her "why did you say that what you said?" telling her "'[t]hat's not something that an 8-year-old girl should be saying'. . . 'Anybody ever do anything to you?'" According to [petitioner], C. "mentioned" something about "her mother and her boyfriend. And when she said that, she started shaking real bad."

11 (Ans., Ex. 6 at 4–5.) Petitioner also asserted that he was physically incapable of any sexual
12 acts during that time, owing to an injury to, and surgeries on, his knee. (*Id.* at 5.)

13     As grounds for federal habeas relief, petitioner alleges that (1) the trial court violated
14 his jury trial rights by excusing three African-American jurors; (2) the trial court gave
15 constitutionally erroneous jury instructions; (3) the trial court violated his right to due
16 process by admitting certain evidence; (4) the prosecutor failed to disclose favorable
17 evidence; (5) there was insufficient evidence to support the convictions; (6) defense
18 counsel rendered ineffective assistance; (7) there was cumulative error; and (8) appellate
19 counsel rendered ineffective assistance.

## STANDARD OF REVIEW

21     This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
22 custody pursuant to the judgment of a State court only on the ground that he is in custody in
23 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
24 The petition may not be granted with respect to any claim that was adjudicated on the merits
25 in state court unless the state court's adjudication of the claim: "(1) resulted in a decision
26 that was contrary to, or involved an unreasonable application of, clearly established Federal
27 law, as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I.   Excusing Jurors

Petitioner claims that the trial court violated his jury trial rights by excusing three black jurors. These decisions to excuse were, according to petitioner, an attempt to exclude African-Americans from the jury. The state superior court rejected this claim in its review of petitioner's state habeas petition: "the exclusion of the three jurors was not done by a prosecutorial peremptory challenge. Instead, the jurors were excused based on the request of the jurors themselves for hardship. Thus, there was no systematic exclusion of black jurors, and relief is denied on this ground." (Am. Pet., Attachment 4 at 2–3.)

This claim fails as there is no evidence to support petitioner's assertion that the decisions to excuse were pretexts for eliminating potential black jurors. There is no record of the voir dire proceedings, and petitioner's self-serving assertions do not constitute sufficient

1 evidence. *See Dows v. Wood*, 211 F.3d 480, 486–87 (9th Cir. 2000). Also, petitioner has
2 made no showing (nor even alleged) that the jury ultimately seated was other than a panel
3 of "impartial, indifferent jurors." *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988). On
4 such a record, not only has there been no showing of a constitutional violation, the state
5 court's decision is entitled to AEDPA deference. Accordingly, the claim is DENIED.

## II.     Jury Instructions

Petitioner claims that the trial court gave constitutionally erroneous jury instructions. More specifically, petitioner claims that the trial court should have given CALJIC No. 2.01 ("Sufficiency of Circumstantial Evidence — Generally"), rather than, as it did give, at defense counsel's request, CALJIC No. 2.02 ("Sufficiency of Circumstantial Evidence to Prove Specific Intent or Mental State"). The law regarding the use of these instructions is as follows:

> CALJIC Nos. 2.01 and 2.02 both relate to circumstantial evidence. The Use Note following CALJIC No. 2.02 states that "CALJIC 2.01 and 2.02 should never be given together. This is because CALJIC 2.01 is inclusive of all issues, including mental state and/or specific intent, whereas CALJIC 2.02 is limited to just mental state and/or specific intent. Therefore, they are alternative instructions. If the only circumstantial evidence relates to specific intent or mental state, CALJIC 2.02 should be given. If the circumstantial evidence relates to other matters, or relates to other matters as well as specific intent or mental state, CALJIC 2.01 should be given and not CALJIC 2.02." [Citations omitted.]

(Ans., Ex. 6 at 12.) At trial and here, petitioner contends that his was a "non-mental-state case." He argues that he could not have had the requisite specific intent because C. touched him while he was sleeping. Therefore, CALJIC No. 2.02 misled the jury by failing to tell it how to evaluate circumstantial evidence not related to his state of mind. This constituted, according to petitioner, both judicial error and ineffective assistance of counsel.

The state appellate court rejected these claims because direct, not circumstantial, evidence, tended to show petitioner's guilt:

> [T]he prosecution relied upon direct, not circumstantial, evidence to prove two of the three elements of the offense of committing a lewd act on a child . . . that is, that [petitioner] touched his victim's body and that the victim was then

> under the age of 14. . . Direct evidence was lacking, and circumstantial evidence therefore necessary, only with respect to the question whether [petitioner]'s conduct was intended to gratify his sexual desires. None of the elements of the continuous sexual abuse charge . . . namely, that [petitioner] had recurring access to his victim, and that during that period he committed three or more acts of lewd or lascivious conduct with a child under the age of 14 . . . were proved by circumstantial evidence, as all were established by C.'s testimony and that of members of her family, which was direct evidence.

(Ans., Ex. 6 at 13–14.) Not only was there no judicial error, counsel was "justified" in requesting CALJIC No. 2.02, "which focused upon the only element of the principle charge not supported by direct evidence." (*Id.* 14–15.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the disputed instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In other words, a federal habeas court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.[1] *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

Habeas relief is not warranted here. First, CALJIC No. 2.02 was appropriate in that only circumstantial evidence bore on the question of specific intent or mental state. Second, because direct evidence supported the other elements, the jury required no instruction on how to use circumstantial evidence when considering these other elements. Because the instructions were not in error, petitioner has not shown that he was denied a fair trial consonant with due process. There was, then, no judicial error. Nor has petitioner shown that counsel's performance was deficient, let alone that such representation resulted in prejudice. The state appellate court's rejection of his claims was reasonable. Accordingly,

---

[1] Petitioner's contention that it was a structural rather than a trial error is unavailing. Only an error in the reasonable doubt instructions qualifies as structural error. *Byrd v. Lewis*, 566 F.3d 855, 867 (9th Cir. 2009).

the claim is DENIED.

## III. Admission of Evidence[2]

Petitioner claims that the trial court should have suppressed physical evidence seized as part of the sexual assault examination (clothing, body tissue and fluid samples). According to petitioner, this evidence was taken without a warrant or other justification, and therefore was seized in violation of the Fourth Amendment.[3]

Fourth Amendment claims are barred from federal habeas review unless the state did not provide an opportunity for full and fair litigation of those claims. *Stone v. Powell*, 428 U.S. 465, 481–82, 494 (1976). The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's actual use of those procedures, bars federal habeas consideration of those claims. *See Gordon v. Duran*, 895 F.2d 610, 613–14 (9th Cir. 1990) (whether or not defendant litigated Fourth Amendment claim in state court is irrelevant if he had opportunity to do so under California law). California state procedure provided an opportunity for full litigation of petitioner's Fourth Amendment claim. *See id.*; Cal. Pen. Code § 1538.5. Accordingly, this claim is DENIED.

## IV. Prosecutor's Alleged Failure to Disclose

Before trial, defense counsel became aware that the victim's mother was married to a sex offender, Hillary Ogden. Ogden violated his parole by spending time with the victim. In June or July of 2004, petitioner informed defense counsel of this, who informed the

---

[2] Petitioner alleges in his traverse, but not in his petition, that he was prejudiced by the admission of evidence of prior bad acts. This claim is denied. First, it was raised only in the traverse. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Second, a federal habeas petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA, the Supreme Court having reserved this as an open question. *Alberni v. McDaniel*, 458 F.3d 860, 866–67 (9th Cir. 2006).

[3] Petitioner also alleges that "no chain of custody" was established regarding the collection of evidence. This claim is DENIED. First, petitioner has not shown that "chain of custody" allegations implicate his clearly established federal constitutional rights. Second, none of his allegations raise any doubt about the soundness or reliability of the highly-inculpatory semen found on C.'s thighs.

prosecutor in September 2004. In response, the prosecutor gave defense counsel the date of Ogden's conviction and the case number. Later that month, the prosecutor filed a motion to suppress the Ogden evidence. Ogden's file was made available to both parties prior to trial. The trial court disallowed admission of the Ogden evidence. Petitioner claims that the prosecutor's failure to disclose the evidence violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). This claim was denied by the state superior court in its review of petitioner's habeas petition.

Under *Brady*, the prosecution must disclose material evidence "favorable to an accused," *id.* at 87, even if the accused has made no request for the evidence in question. *United States v. Agurs*, 427 U.S. 97, 110–11 (1976). In order to establish a *Brady* violation, petitioner must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence had been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Yet, there is no *Brady* violation "where the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence," even if the government failed to bring the evidence to the attention of the defense. *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006).

Petitioner's claim fails for two reasons. First, defense counsel became aware of this evidence well before trial, and the prosecution then made available what information it had. As defense counsel had the essential facts enabling him to take advantage of this evidence, no *Brady* violation occurred. Second, prejudice has not been shown. The Ogden evidence is too weak to overcome the evidence that petitioner's semen was found on the victim, and that there was no evidence that Ogden sexually molested the victim. As no *Brady* violation occurred, this claim is DENIED.

## V. Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his convictions for (A) committing a lewd and lascivious act on a child, and (B) continuous sexual abuse of a child. The state supreme court summarily rejected these claims.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Indeed, if confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *See Jackson*, 443 U.S. at 324. In sum, "the only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

### (A) Lewd and Lascivious Act

The jury convicted petitioner of twice violating Cal. Penal Code § 288(a), "Lewd or lascivious acts," which reads as follows:

> Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

1  Under long-established California law, the statute "is violated by 'any touching' of an
2  underage child accomplished with the intent of arousing the sexual desires of either the
3  perpetrator or the child." *People v. Martinez*, 11 Cal. 4th 434, 452 (Cal. 1995). "In all cases
4  arising under this statute the purpose of the perpetrator in touching the child is the controlling
5  factor and each case is to be examined in the light of the intent with which the act was done."
6  *People v. Nothnagel*, 187 Cal. App. 2d 219, 225 (Cal. App. Ct. 1960) (citations omitted).
7  Criminal intent may be inferred from the defendant's conduct and surrounding
8  circumstances. *Martinez*, 11 Cal. 4th 434 at 450.

There was sufficient evidence to satisfy *Jackson*. The victim, C., an eight year old female, testified that she awoke to find her underwear pulled down, petitioner, an adult male, "moving up and down on top of her," with his penis in her vagina. She also testified that petitioner anally penetrated her, and that she later cleaned off a "greasy substance" she found between her legs. Expert witnesses testified that semen bearing petitioner's DNA profile was found on C.'s thighs, and that a "generalized redness" between C.'s labia could have been caused by penile penetration. Such testimonial and physical evidence provides ample proof on which a rational juror could have found beyond a reasonable doubt that petitioner touched an underage child with the intent of arousing his sexual desires. As to petitioner's assertions to the contrary, this Court must assume that the jury resolved any conflicting inferences in favor of the prosecution, and defer to that resolution. Because the jury's finding does not fall below the threshold of bare rationality, this claim is DENIED. Furthermore, the ample evidence demonstrates that the state court's rejection of the claim was reasonable, and therefore such decision is entitled to AEDPA deference.

**(B)   Continuous Sexual Abuse of a Child**

The victim, C., "spent every other weekend with her great aunt L.[ ], L.'s daughter A., and [petitioner], who was L.'s husband. L. would ordinarily take C. from her grandmother's apartment on Friday or Saturday morning to the apartment she shared with [petitioner] and her daughter A. and return her on Sunday." (Ans., Ex. 6 at 2.) According to C.'s testimony,

it was during these visits that petitioner sexually molested her. She guessed that there were about 10 such molestations. (*Id.* at 3.) The jury convicted petitioner of violating Cal. Penal Code § 288.5 ("Continuous sexual abuse of a child"), which reads as follows:

> Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.

As with the above claim, there was sufficient evidence to satisfy *Jackson*. C., an eight year-old-female, testified that since she was seven, petitioner repeatedly sexually molested her during her weekend visits to his residence. On such evidence, a rational juror could find that petitioner had recurring access to C., and engaged in at least three acts of substantial sexual conduct over at least three months. As to petitioner's assertions to the contrary, this Court must assume that the jury resolved any conflicting inferences in favor of the prosecution, and defer to that resolution. Because the jury's finding does not fall below the threshold of bare rationality, this claim is DENIED. Furthermore, the ample evidence demonstrates that the state court's rejection of the claim was reasonable, and therefore is entitled to AEDPA deference.

**VI.  Assistance of Counsel**

Petitioner claims that defense counsel rendered ineffective assistance by (A) failing to inform him of a plea-bargain offer; (B) failing to investigate or to prepare an adequate defense; and (C) having a conflict of interest. The state superior court, sitting in habeas review, rejected all such claims. The record shows both that petitioner has failed to show any constitutional violations, and that the state court's rejections of these claims was reasonable.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a habeas petitioner must establish two things. First, he must establish that counsel's performance was

1 deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing
2 professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, he
3 must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a
4 reasonable probability that, but for counsel's unprofessional errors, the result of the
5 proceeding would have been different." *Id.* at 694. A reasonable probability is a probability
6 sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result
7 must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011)
8 (citing *Strickland*, 466 U.S. at 693).

### A.   Plea-Bargain Offer

Petitioner claims that defense counsel failed to inform him that the prosecution had offered a plea-bargain in which a sentence of seven years was presented. The sole evidence that this offer existed is petitioner's and his wife's declarations.[4] The state superior court denied this claim because petitioner "does not say he would have taken the offer if he had been given adequate advice, but instead says the option was taken away." (Am. Pet., Attachment 4 at 3.) Such statement "is insufficient in and of itself to establish prejudice, and relief is denied on this ground." (*Id.*)

The state court reasonably determined that petitioner failed to show ineffective assistance of counsel. First, as noted by the state court, petitioner does not say that he would have accepted the offer. The declarations filed in state court were, then, facially insufficient to show a reasonable probability that he would have pleaded guilty.[5] Second, even if his declaration was facially sufficient, his and wife's declarations do not constitute evidence that

---

[4] At times, petitioner appears to be unsure whether there was a such an offer. In his traverse, he attaches a letter to defense counsel asking him to confirm whether there was a plea offer. (Trav., Ex. A.)

[5] The state court's decision was based on the record before it. In his amended federal petition, petitioner now says that he would have accepted the offer. This does not change the outcome here. First, the state court's decision was reasonable based on the record it had, and is therefore entitled to AEDPA deference. Second, petitioner still has not shown that such an offer existed. His present assertion that he would have taken the offer, then, is insufficient to show a constitutional violation.

the plea-bargain offer existed. *See Dows*, 211 F.3d at 486–87. Because petitioner has not shown that such an offer existed, he cannot show either a deficient performance or prejudice. The state court's decision was therefore reasonable. His claim is DENIED.

### (B) Investigation and Preparation

Petitioner claims that defense counsel failed to (1) investigate whether Ogden molested C., and (2) consult with and present a DNA expert witness.

#### (1) Investigation

The state superior court denied this claim because petitioner failed to show prejudice in light of the strong evidence, both testimonial and physical, that supported the jury's verdict. (Am. Pet., Attachment 4 at 4.) This denial was reasonable. First, petitioner has failed to specify what evidence supported Ogden's culpability. Failure to identify such information is a failure to show that trial counsel's performance was deficient, or that the alleged deficiency resulted in prejudice, the necessary showing to sustain an ineffective assistance claim. *See Gallego v. McDaniel*, 124 F.3d 1065, 1077 (9th Cir. 1997). Second, petitioner has not shown prejudice. His semen was found on C.'s thighs, a redness on C's genitalia could have been caused by a sexual assault, and C. testified that petitioner had in fact molested her. This claim is DENIED.

#### (2) DNA Expert

This claim is DENIED. Again, petitioner has failed to identify information as to what testimony a DNA expert would have given. Where the evidence does not warrant it, the failure to call an expert does not amount to ineffective assistance of counsel. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999). Also, even if petitioner had articulated such information, "[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Finally, counsel was not required to consult or present a DNA expert because the prosecutor presented one. *See Richter*, 131 S. Ct. at 791. This claim is DENIED.

### C. Conflict of Interest

This claim is DENIED. The petition contains only conclusory allegations. The traverse contains allegations that counsel (1) refused to call petitioner's church friends to testify as to his good character, (2) told him he believed petitioner to be guilty, and (3) refused to allow him to discuss his religious beliefs. First, these allegations must be denied because petitioner failed to raise them in his petition. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Second, petitioner has not shown that his "(1) counsel actively represented conflicting interests; and (2) an actual conflict of interest adversely affected counsel's performance." *Rich v. Calderon*, 187 F.3d 1064, 1069 (9th Cir. 1999) (citations omitted). A claim that a conflict produced an adverse impact is not perfected by simply making the claim; petitioner must show that it had an impact that "significantly worsens counsel's representation of the client." *United States v. Mett*, 65 F.3d 1531, 1535–36 (9th Cir. 1995). While petitioner has pointed to alleged conflicts, he has not shown how this information significantly worsened the quality of representation. Third, petitioner has not shown prejudice. He has not shown how these alleged deficiencies resulted in a flawed defense (e.g., his allegations regarding his unnamed church friends are conclusory and undetailed), or undermines the highly inculpatory physical and testimonial evidence.

### VII. Cumulative Error

Petitioner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893–95 (9th Cir. 2003). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002). Because petitioner has not shown a single constitutional error, his cumulative error claim necessarily fails. Accordingly, this claim is DENIED.

## VIII. Appellate Counsel

Petitioner claims that appellate counsel, who represented him on direct review in the state appellate and supreme courts, rendered ineffective assistance by not filing a state habeas petition. Habeas relief is not warranted here. The claims raised in the instant petition encompass the same ones for which petitioner sought review in state court. Because all the claims discussed above lack merit, appellate counsel cannot have rendered ineffective assistance by failing to raise them. As those claims are lacking, petitioner cannot show a reasonable possibility that but for appellate counsel's actions, the outcome of the proceeding would have been different. This claim is DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: December 10, 2012

RICHARD SEEBORG
United States District Judge